UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| DANIEL JAY PEREZ,<br><br>                      Plaintiff,<br>     v.<br><br>WASHINGTON STATE DEPARTMENT<br>OF CORRECTIONS, et al.,<br><br>                      Defendants. | Case No. 3:18-cv-05127 RBL-TLF<br><br>REPORT AND<br>RECOMMENDATION<br><br>NOTED FOR JULY 20, 2018 |

This matter is before the Court on defendants' motion to dismiss under Federal Rule of Civil Procedure (FRCP) 12(b)(6). Dkt. 29. Defendants argue plaintiff's complaint should be dismissed as untimely and that the complaint fails to allege personal participation by certain defendants. *Id.* The undersigned recommends the Court GRANT dismissal with prejudice of plaintiff's claims against defendants Collins and Saunders, as plaintiff concedes that he failed to state a claim against them. The Court should GRANT dismissal without prejudice of plaintiff's claims against defendants Briones, White, Sinclair, Wright, Pacholke, Warner, Herzog, and Gage, because the complaint fails to allege that those defendants personally participated in causing the alleged constitutional violations. Dkt. 3, pp. 5-13 (complaint). However, the Court should DENY defendants' motion to dismiss the entire complaint, because the Court cannot determine from the face of the complaint whether there was a tolling of the statute of limitations that applies to plaintiff's claims under the circumstances of this case.

REPORT AND RECOMMENDATION - 1

**BACKGROUND**

Perez is incarcerated at Monroe Correctional Complex–Special Offender Unit. He sues the Washington State Department of Corrections along with 31 named individuals and 31 "John and Jane Does." Dkt. 3. Perez alleges that defendants violated his rights under the Eighth and Fourteenth Amendments and the Americans with Disabilities Act, 42 U.S.C. § 12101. He alleges that he was placed in solitary confinement in 2006 after his cellmate's death and kept in solitary confinement for much of the next eight years, while being denied adequate treatment for his mental health issues. Dkt. 3, pp. 5-13. He alleges that defendants predetermined the outcome of six-month reviews of his confinement. *Id.*

**STANDARD OF REVIEW**

A motion to dismiss may be granted only if the complaint, with all factual allegations accepted as true, fails to "raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 545 (2007). When reviewing a motion to dismiss a civil rights complaint brought by a *pro se* plaintiff, the District Court is "required to interpret the *pro se* complaint liberally". *Sause v. Bauer, —* U.S. —, No. 17-742, Slip Op. at *3 (June 28, 2018) (Per Curiam).

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully.

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*quoting Twombly*, 550 U.S. at 556, 570).

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "Specific facts are not necessary; the statement need only give the defendant fair notice of what the . . . claim is and the grounds upon

which it rests." *Erickson v. Pardus, et al.*, 551 U.S. 89, 93 (2007) (internal citations omitted). However, the pleading must be more than an "unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678.

While the Court must accept all the allegations contained in a complaint as true, the Court does not have to accept "a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678; *Jones v. Community Development Agency*, 733 F.2d 646, 649 (9th Cir. 1984) (vague and mere conclusory allegations unsupported by facts are not sufficient to state section 1983 claims); *Pena v. Gardner*, 976 F.2d 469, 471 (9th Cir. 1992). While the Court is to construe a complaint liberally, such construction "may not supply essential elements of the claim that were not initially pled." *Pena*, 976 F.2d at 471.

## DISCUSSION

Plaintiff's complaint is brought under the Civil Rights Act, 42 U.S.C. § 1983. To state a claim under § 1983, a plaintiff must allege facts showing (1) the conduct about which he complains was committed by a person acting under the color of state law; and (2) the conduct deprived him of a federal constitutional or statutory right. *Wood v. Ostrander*, 879 F.2d 583, 587 (9th Cir. 1989). In addition, to state a valid § 1983 claim, a plaintiff must allege that he suffered a specific injury as a result of the conduct of a particular defendant, and he must allege an affirmative link between the injury and the conduct of that defendant. *Rizzo v. Goode*, 423 U.S. 362, 371-72, 377 (1976).

A.     Personal Participation

A plaintiff in a § 1983 action must allege facts showing how defendants individually caused or personally participated in causing the harm alleged in the complaint. *Arnold v. IBM*, 637 F.2d 1350, 1355 (9th Cir. 1981). A plaintiff may not hold supervisory personnel liable under § 1983 for constitutional deprivations under a theory of supervisory liability. *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Rather, a plaintiff must allege some facts that would support a claim that a supervisory defendant either personally participated in the alleged deprivation of constitutional rights, knew of the violations and failed to act to prevent them, or promulgated or implemented a deficient policy that itself violated constitutional rights and was the moving force that resulted in the constitutional violation. *OSU Student Alliance v. Ray*, 699 F.3d 1053, 1076 (9th Cir. 2012); *Starr v. Baca*, 652 F.3d 1202, 1207-08 (9th Cir. 2011).

Here, Perez has failed to allege personal participation with respect to three sets of defendants:

The complaint alleges that, as supervisors, Jose Briones and Daniel White approved of Perez's conditions of confinement. Dkt. 3, p. 8. However, Perez's conclusory allegation that as supervisors Briones and White "ha[d] to approve" his conditions of confinement is not sufficient to allege that they were personally involved in the alleged violations or that they knew of and acquiesced in the specific conduct that Perez alleges was unconstitutional. *See Hydrick v. Hunter*, 669 F.3d 937, 942 (9th Cir. 2012). Accordingly, Perez has not adequately alleged personal participation by Briones and White.

The complaint further alleges that "[h]eadquarter staff knew of" the conditions of confinement "and did nothing and therefore these staff signed off on" those conditions. Dkt. 3, p. 8. It then lists headquarters staff including defendants Dan Pacholke, Bernard Warner, Steve Sinclair, Earl Wright, Robert Herzog, and Bruce Gage. *Id.* It alleges these defendants "knew

- 4

1  about and did nothing to stop" the conditions described in the complaint. *Id.* It also alleges that

2  five of these defendants—Pacholke, Bernard Warner, Sinclair, Wright, and Herzog—

3  "promulgated WAC rule 713 and 712 and infracted plaintiff for behaviors that were mental

4  health in nature." Dkt. 3, p. 12. The complaint alleges that the sixth of these defendants, Gage,

5  was part of the "multi-disciplinary team" committee that assigned his expectations for release

6  from Intensive Management Status (IMS). Dkt. 3, p. 9.

7        These allegations are again insufficient to show personal participation by these

8  defendants. Instead, Perez's "complaint is based on conclusory allegations and generalities,

9  without any allegation of the specific wrong-doing by each [d]efendant." *Hydrick*, 669 F.3d at

10  942. Although Perez asserts conclusorily that defendants "knew about and did nothing to stop"

11  the alleged violations, the complaint contains no "specific allegations regarding each

12  [d]efendant's purported knowledge." *Id.*; Dkt. 3, p. 8. Moreover, the complaint does not indicate

13  when or for what Pacholke, Bernard Warner, Sinclair, Wright, and Herzog infracted Perez, and

14  thus lacks allegations to show that such infractions were illegal. Dkt. 3, p. 12. With respect to

15  Gage, the complaint alleges he had a role in setting requirements for release from IMS but again

16  alleges no specific facts to show that such requirements caused a constitutional violation. Dkt. 3,

17  pp. 8-9.

18        Accordingly, the complaint does not state facts from which the Court could infer that

19  Pacholke, Bernard Warner, Sinclair, Wright, Herzog, and Gage caused or personally participated

20  in causing the harm Perez alleges. Perez's claims against these six defendants should be

21  dismissed. Because it is not clear that amendment would be futile, however, dismissal should be

22  without prejudice. *See Mirmehdi v. United States*, 689 F.3d 975, 985 (9th Cir. 2012).

Finally, the complaint does not mention defendants Susan Collins or Todd Saunders other than in the caption and parties section. Dkt. 3. Perez acknowledges that he did not adequately plead claims against Collins or Saunders. Dkt. 31, p. 15. Perez's claims against those defendants should be dismissed with prejudice.

B.     Statute of Limitations

Defendants also contend in their motion to dismiss that Perez's entire complaint is time-barred. Dkt. 29.

Section 1983 contains no statute of limitations. *Butler v. Nat'l Cmty. Renaissance of California*, 766 F.3d 1191, 1198 (9th Cir. 2014). Federal courts therefore "apply the forum state's statute of limitations for personal injury actions, along with the forum state's law regarding tolling, including equitable tolling, except to the extent any of these laws is inconsistent with federal law." *Id.* (internal quotation marks omitted). In Washington, a plaintiff has three years to file a § 1983 action. *Rose v. Rinaldi*, 654 F.2d 546, 547 (9th Cir. 1981); RCW 4.16.080(2).

Federal law determines when a § 1983 claim accrues. *Tworivers v. Lewis*, 174 F.3d 987, 991 (9th Cir. 1999). Such a claim accrues when the plaintiff knows or has reason to know of the injury that is the basis of the action. *Pouncil v. Tilton*, 704 F.3d 568, 573 (9th Cir. 2012); *see also Knox v. Davis*, 260 F.3d 1009, 1013 (9th Cir. 2001). "An act must be 'discrete' or 'independently wrongful' to cause a new claim to accrue." *Ervine v. Desert View Reg'l Med. Ctr. Holdings*, LLC, 753 F.3d 862, 870 (9th Cir. 2014).

To dismiss a complaint as untimely on a Rule 12(b)(6) motion, the untimeliness must appear on the face of the complaint. *Supermail Cargo, Inc. v. United States*, 68 F.3d 1204, 1206-07 (9th Cir. 1995); *Von Saher v. Norton Simon Museum of Art at Pasadena*, 592 F.3d 954, 969 (9th Cir. 2010). "When on the face of a complaint an action is barred by the statute of limitations, the burden of alleging facts which would give rise to tolling falls upon the plaintiff."

*Hinton v. Pac. Enters.*, 5 F.3d 391, 395 (9th Cir. 1993). The statute of limitations warrants dismissal only if there is no genuine factual dispute as to when the claim began to accrue. *Sisseton-Wahpeton Sioux Tribe, of Lake Traverse Indian Reservation, N. Dakota & S. Dakota v. United States*, 895 F.2d 588, 591 (9th Cir. 1990).

    1.    Accrual Date

The complaint alleges as follows:

Perez was placed in administrative segregation in June 2006. He was moved to a suicide-watch cell for about four days, then spent over two months, from June to August 2006, in a solitary-confinement cell. When he left solitary confinement he suffered mental-health issues that caused him to self-harm. Dkt. 3, pp. 5-6.

He was transferred to the Special Offender Unit and placed in a long-term Intensive Management Status program that imposed certain conditions. These included completing 12 months without an infraction. Dkt. 3, p. 7.

He had hearings every 30 to 180 days, which he alleges were "meaningless." His 12-month completion period was repeatedly reset due to self-harm, suicide attempts, and other infractions, which were punished with more time in administrative segregation and isolation and loss of good-time credits. Dkt. 3, pp. 7-11.

Perez was again sent to administrative segregation in August 2009. He was again placed in solitary confinement. Dkt. 3, p. 8.

Perez received new requirements for the IMS program, including 18 months of infraction free time. Dkt. 3, p. 9. From October 2009 to July 2011, he continued to receive infractions, including for self-harm and attempted suicide. Dkt. 3, pp. 8-9.

1          In January 2012 and again after hearings in May 2012 and May 2013, DOC officials

2   determined that "ITS/MAX custody" conditions still applied to Perez. Perez alleges that the

3   result of these hearings was predetermined. Dkt. 3, p. 9.

4          Perez was transferred to the Monroe Correctional Complex Intensive Management Unit

5   (IMU) in September 2013 for an indefinite term. Dkt. 3, pp. 9-10.

6          He was transferred to Clallam Bay Corrections Center IMU in June or July 2014. He was

7   placed in isolation for 23-24 hours per day, six days per week. He participated in an Intensive

8   Transition Program that incentivized good behavior with additional privileges. He completed that

9   program on April 7, 2015. Perez states that he "has since been placed in solitary confinement

10  only 2 times." Dkt. 3, p. 11.

11         Perez alleges that solitary confinement has caused and exacerbated severe mental-health

12  conditions. In particular, he states that from mid-2006 to late 2007 "he "noticed a significant

13  difference in his thoughts," heard voices, and harmed himself. He states that his mental state

14  continued to deteriorate: in 2009 he began hallucinating more, and in 2011 he "got a wake up

15  call when I almost committed suicide." Dkt. 3, p. 11.

16         Perez filed his complaint on February 12, 2018, at the earliest. Dkt. 1; *see* Dkt. 31, p. 1

17  (Perez states that he filed his complaint with DOC staff on February 12, though it was not e-filed

18  with the Court until February 16); *Douglas v. Noelle*, 567 F.3d 1103, 1108 (9th Cir. 2009)

19  (mailbox rule applies when prisoner delivers complaint to prison authorities).

20         As the complaint describes them, the acts that caused deprivations of Perez's

21  constitutional rights occurred between 2006 and 2014. Dkt. 3, pp. 5-13. Even if the consequences

22  of those acts have worsened over time, Perez's civil rights claim accrued when he knew or had

23  reason to know of the injuries caused by defendants' acts. *Kimes*, 84 F.3d at 1128. The complaint

shows on its face that Perez knew of the harm caused by those acts before February 12, 2015. *See* Dkt. 3, pp. 5-1. For instance, the complaint states that Perez aware that he was suffering the adverse effects of solitary confinement as early as 2006. Dkt. 3, p. 11. Accordingly, Perez's claims accrued outside the three-year statutory period. *See Kimes*, 84 F.3d at 1128.

Perez offers three arguments for why the statute of limitations nonetheless does not bar his claims. Only two of those arguments can be resolved based on facts apparent from the face of the complaint.

2.      Continuing-Violation Doctrine

First, Perez asserts that the continuing-violation doctrine prevents his claims from being barred. The continuing-violation doctrine allows a plaintiff to seek relief for the cumulative effects of repeated conduct that began outside the limitations period and continued into the limitations period. *See Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 115–21 (2002). The doctrine, however, does not apply to discrete acts that are time barred, even when they relate to acts within the limitations period. *Id.* at 113. The doctrine also does not apply to the continuing impact from a wrongful act outside the limitations period. *Knox v. Davis*, 260 F.3d 1009, 1013 (9th Cir. 2001).

The doctrine does not apply in Perez's case, because even if the defendants' conduct in keeping him in solitary confinement were "repeated instances or continuing acts of the same nature," it is plain from the face of the complaint that those acts did not extend into the statutory period. *See Sisseton-Wahpeton Sioux Tribe of Lake Traverse Indian Reservation*, 895 F.2d 588, 597 (1990) (citing as examples "repeated acts of sexual harassment or repeated discriminatory employment practices"). The last act that Perez alleges in defendants' pattern of infracting him and renewing his restrictive conditions of confinement occurred in June or July 2014, when he was transferred to Clallam Bay IMU. Dkt. 3, p. 10.

1    Perez alleges he was placed in solitary confinement twice since April 7, 2015, and thus

2 within the statutory period. Dkt. 3, p. 11. But the complaint does not assert that those instances

3 were part of the pattern of unlawful confinement that allegedly occurred between 2006 and 2014.

4 *See* Dkt. 3, pp. 5-11. Instead, the complaint mentions them only to imply that being sent to

5 solitary "only 2 times" in that period shows that Perez "has beat the odds against him." Dkt. 3, p.

6 11. Nor does Perez allege what defendant, if any, was responsible for that action or any facts

7 about that confinement that the Court can reasonably interpret as a timely allegation to support

8 his § 1983 claim.

9    The only other event that Perez alleges occurred during the statutory period is his

10 graduation from the Intensive Transition Program on April 7, 2015. Dkt. 3, p. 11. He does not

11 allege that this is part of defendants' unconstitutional conduct. *Id.*

12    Perez alleges that he continues to suffer the harmful effects of solitary confinement. Dkt.

13 3, p. 11. But the continuing-violation doctrine does not apply to the continuing impact of a

14 wrongful act that occurred outside the limitations period. *Knox*, 260 F.3d at 1013.

15    Accordingly, Perez is incorrect that his claims are timely allegations of a continuing

16 violation.

17    3.    *Heck* Accrual Rule and "Favorable Termination"

18    Second, Perez asserts that the "favorable termination" rule from *Heck v. Humphrey*, 512

19 U.S. 477 (1994), means that his claims did not accrue until his release from solitary confinement.

20    In *Heck*, the Supreme Court held that when a § 1983 damages action implicates the

21 validity of an existing conviction or imprisonment, the action does not accrue unless and until

22 that conviction or imprisonment is reversed, expunged, or otherwise declared invalid by a state

23 tribunal. *See Heck*, 512 U.S. at 489-90. This holding has also been applied to prison disciplinary

24 matters where the plaintiff's action calls into question the validity of the disciplinary ruling. *See*

25

*Black v. Coughlin*, 76 F.3d 72 (2d Cir. 1996) (holding § 1983 action based on improperly conducted disciplinary proceeding did not accrue until state court reversed the disciplinary ruling); *Muhammad v. Close*, 540 U.S. 749 (2004) (holding *Heck* did not bar damages claim against corrections officer who allegedly retaliated against prisoner by subjecting him to prehearing lockup, because suit did not seek to overturn conviction or reduce sentence).

The Court does not need to decide whether the *Heck* rule would apply here, because it would not make Perez's claims timely even if it does:

If, as in *Muhammad*, *Heck* does not apply to this situation, then the normal accrual rule applies and, as discussed above, Perez's claim accrued when Perez knew or had reason to know of the injuries caused by defendants' acts. *Muhammad*, 540 U.S. at 754; *Kimes*, 84 F.3d at 1128.

If, on the other hand, the *Heck* rule does apply to disciplinary proceedings resulting in solitary confinement, as in *Black*, then Perez's claims have not accrued at all. *See Black*, 76 F.3d at 75. Perez does not allege that any disciplinary action against him has been reversed, expunged, or otherwise declared invalid by a state tribunal. *See Heck*, 512 U.S. at 489-90. Rather, he alleges that he graduated from the required transitional programming. Dkt. 3, pp. 10-11. Perez's completion of a required prison program is in no way analogous to a state tribunal declaring invalid the disciplinary actions that led to his solitary confinement.

Accordingly, the *Heck* rule would not prevent Perez's claims from being time-barred.

4. Statutory Tolling

Perez's third argument, however, cannot be resolved based on the facts alleged in the complaint.

Perez asserts that the statute of limitations should not bar his claims because those claims were tolled under a Washington statute, RCW 4.16.190. Perez is correct that state law governs

- 11

the tolling of statutes of limitations for § 1983 claims. *Butler*, 766 F.3d at 1198. The Washington Supreme Court has held,

> RCW 4.16.190 has four factors plaintiffs must satisfy to toll the statute of limitations based upon incompetence or disability. Plaintiffs must show that (1) they are entitled to bring the action, (2) they are incapacitated at the time the cause of action accrues, (3) they are incompetent or disabled to the degree that they cannot understand the nature of the proceedings, and (4) the incompetency or disability exists as "determined according to chapter 11.88 RCW."

*Rivas v. Overlake Hosp. Med. Ctr.*, 164 Wn.2d 261, 268 (2008). With respect to the fourth factor, the court noted that under RCW 11.88, "'a person may be deemed incapacitated as to person when . . . the individual has a significant risk of personal harm based upon a demonstrated inability to adequately provide for nutrition, health, housing, or physical safety.'" *Rivas*, 164 Wn.2d at 268 (quoting RCW 11.88.010(1)).

Accordingly, to toll the statute of limitations, Perez must show that he had a significant risk of personal harm due to his inability to adequately provide himself with nutrition, health, housing, or physical safety, *and* that he was disabled to such a degree that he was unable to understand the nature of these proceedings. *See Rivas*, 164 Wn.2d at 268.

Perez asserts, in his response to the motion to dismiss, that he was incapacitated when his claims accrued because:

> He was in solitary confinement unable to provide for himself[.] B) He was suffering from a serious mental illnes[s] of some sort be it PTSD, Psychosis NOS, Gravely disabled, Schizophrenia, Bipolar and borderline personality disorder. C) He was actively committing serious and dangerous acts against himself and being punished for those act[s]. . . . This lasted from 2006 through 2015. Plaintiff was placed on involuntary medications forced upon him were force was used from 2009-2010. Plaintiff was incarcerated prior to sentencing from 2006-2008 and 2011-2012 and amended sentencing 2015. Plaintiff was actively psychotic at times while housed in solitary confinement. [P]laintiff could not understand the nature of the proceedings.

Dkt. 31, pp. 13-14. He further asserts that he was incapacitated in that "he over time was unable to care for his person or even keep himself safe due to the effects of solitary confinement." Dkt. 31, p. 14. The complaint alleges facts consistent with this account. Dkt. 3, pp. 5-13.

The Court is conscious of its responsibility to liberally construe *pro se* complaints. *Sause v. Bauer,* — U.S. —, No. 17-742, Slip Op. at *3 (June 28, 2018) (Per Curiam). Interpreting the complaint broadly is particularly imperative for civil rights claims, and *pro se* pleadings must be reviewed by less stringent standards than lawyer-drafted formal pleadings to do substantial justice. *Erickson v. Pardus, et al.*, 551 U.S. 89, 94 (2007).

With these principles in mind, it is not plain from the face of the complaint that Perez fails to allege facts that would demonstrate an "incompetence or disability" within the meaning of Washington's tolling statute. *See Sisseton-Wahpeton Sioux Tribe*, 895 F.2d at 597. Accordingly, the Court should deny defendants' motion to dismiss the complaint as untimely.

## CONCLUSION

Plaintiff failed to sufficiently state a claim against defendants Collins, Saunders, Briones, White, Sinclair, Wright, Pacholke, Bernard Warner, Herzog, and Gage. Therefore, the motion to dismiss should be GRANTED with respect to those defendants. Dismissal should be with prejudice with respect to Collins and Saunders and without prejudice with respect to the other defendants. However, because it is not plain from the complaint that plaintiff would be unable to show that he qualifies for statutory tolling, the Court should DENY defendants' motion to dismiss the complaint as untimely.

The parties have **fourteen (14) days** from service of this Report and Recommendation to file written objections thereto. 28 U.S.C. § 636(b)(1); FRCP 6; FRCP 72(b). Failure to file objections will result in a waiver of those objections for purposes of appeal. *Thomas v. Arn*, 474

U.S. 140 (1985). Accommodating this time limitation, this matter shall be set for consideration on **July 20, 2018**, as noted in the caption.

Dated this 2nd day of July, 2018.

*Theresa L. Fricke*
Theresa L. Fricke
United States Magistrate Judge